# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT BOWLING GREEN
# CIVIL ACTION NO. 1:13CV-P142-M

**CALVIN D. STRANGE, JR.**                                                   **PLAINTIFF**

**v.**

**JACKIE STRODE** *et al.*                                                        **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Plaintiff Calvin D. Strange, Jr., then a prisoner, filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. §§ 1983 and 1985 and 18 U.S.C. §§ 2, 241, 242, and 371 (DN 6). The complaint is now before the Court on initial review pursuant to 28 U.S.C. § 1915A. For the reasons that follow, certain claims will be dismissed and others will be allowed to continue.

## I. SUMMARY OF FACTS AND CLAIMS

Plaintiff brings this civil-rights action against the following officers and employees at the Warren County Regional Jail (WCRJ) in their official capacities: Jailer Jackie Strode; Misse Edmonds; Cpt. Tim Wilson; Barry T. Dority; Dr. Ronald Waldridge, M.D.; and four unnamed deputies. Plaintiff raises six claims.

First, Plaintiff claims that he "was denied the opportunity to celebrate Yom Kippur and Passover required by [his] religion." He alleges that, in October 2012 before Yom Kippur and in March 2013 before Passover, he filed "the request's for meals to follow my religious teachings" but both requests were denied. Plaintiff claims that the denial of meals by Defendants Strode and Edmonds interfered with his freedom of religion in violation of the First Amendment and also violated the Ninth Amendment.

Second, Plaintiff reports that he has a "herniated nucleus polposus (a herniated disc) at L5-S1 with moderate nerve root compression." He claims that Defendants Strode, Edmonds,

Waldridge, and Dority have conspired with each other to deny Plaintiff effective pain medication despite analgesics being readily available. He states that, in the past, Defendant Waldridge had provided analgesics, but discontinued doing so in June 2013. He states that Defendant Waldridge told him he could buy analgesics from the commissary. Plaintiff alleges that since having the analgesics discontinued he has suffered debilitating and continuous back pain.

Next, Plaintiff alleges that he suffers from cirrhosis of the liver and that he was not treated for ammonia buildup in the blood until May 2, 2012, after he was given a blood test to check ammonia levels in his blood. According to Plaintiff, the treatment for ammonia in the blood consists of administering Lactulose, a laxative, whereby "the bowel process removes the ammonia through the colon." Plaintiff alleges that, had Defendants "performed the blood test in August 2011[,] Lactulose could have been p[re]scribed and would have put the plaintiff in a position to maintain a therapeutic level." Plaintiff further alleges that between May 2012 and April 2013 the medication was administered twice a day instead of three times a day, which he alleges caused him chronic diarrhea from May 2012 to May 2013.

Plaintiff next alleges that on July 9, 2013, he developed "a very painful lesion" on his left buttock. Plaintiff put in a sick call request, and the nurse lanced the lesion (boil), drained it, and prescribed ten days of antibiotics. Over the next ten days, she repeatedly lanced and drained the boil, but did not give him any analgesics because Defendant Waldridge had discontinued his Tylenol.

In his fifth claim, Plaintiff alleges that he suffered cruel and unusual punishment when he was placed in a filthy cell for 24 hours of segregation. He states that he was not given cleaning supplies to clean the toilet so it could be used to "relieve his bowels."

2

Plaintiff's last claim relates to his mail. He alleges that Defendants Strode and Edmonds conspired with each other on four occasions in the prior year by "confiscating and seizing legal correspondence." He also states that Defendants "delayed legal correspondence that was clearly marked as privileged correspondence, the return address included the statement of 'ELPO Law' the defendants own counsel." He alleges that Defendants Strode and Edmonds have "interfered with operation of judicial process by illegally with premeditation interfered with the plaintiff's mail for the express purpose of thwarting the plaintiff's ability to effectively litigate his civil claim against them."

As relief, Plaintiff asks for compensatory and punitive damages.

## II. **STANDARD OF REVIEW**

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). Under § 1915A, the Court must review the complaint and dismiss the complaint, or any portion of the complaint, if it determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain

3

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although courts are to hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519 (1972), this duty to be less stringent "does not require us to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require courts "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III. ANALYSIS

### A. 18 U.S.C. §§ 2, 241, 242, and 371

Plaintiff's references to sections of Title 18 of the U.S. Code are references to criminal statutes that do not support a private cause of action. *See United States v. Oguaju*, 76 F. App'x 579 (6th Cir. 2003); *Abou-Hussein v. Gates*, 657 F. Supp. 2d 77, 81 (D.D.C. 2009). Generally, there is no private right of action to enforce criminal statutes. *Am. Post. Wkrs. U., Detroit v. Indep. Post. Sys.*, 481 F.2d 90, 93 (6th Cir. 1973). As a private citizen, Plaintiff lacks "a judicially cognizable interest in the prosecution or nonprosecution" of Defendants under these statutes. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Accordingly, Plaintiff lacks standing to maintain these claims, and the Court must dismiss them. *See Booth v. Henson*, 290 F. App'x 919, 921 (6th Cir. 2008) (per curiam) (affirming district court's dismissal of a civil action under 18 U.S.C. §§ 241 and 242).

### B. 42 U.S.C. § 1985

The only portion of this statutory provision which could be considered applicable to the instant case is § 1985(3). To the extent that Plaintiff is attempting to raise a claim under 42 U.S.C. § 1985(3), the Court finds that he fails to do. Section 1985(3) states in pertinent part as follows:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages

> occasioned by such injury or deprivation, against any one or more of the conspirators.

In order to prove a claim of conspiracy in violation of § 1985(3), Plaintiff must prove: (1) a conspiracy of two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or the deprivation of any right or privilege of the United States. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994). Plaintiff must also show that the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Moreover, "[a] class protected by section § 1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender." *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994).

In the present case, Plaintiff has not alleged that there existed a conspiracy motivated by any racial or other class-based animus. Consequently, Plaintiff has failed to state a claim under § 1985(3).

## C.  42 U.S.C. § 1983

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502,

504 (6th Cir. 1991).

Plaintiff sues Defendants in their official capacities. If an action is brought against an official of a governmental entity in his official capacity, the suit should be construed as brought against the governmental entity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, in the case at bar, Plaintiff's claims against Defendants in their official capacities are actually brought against Warren County. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

When a § 1983 claim is made against a municipality, like Warren County, a court must analyze not only whether the plaintiff's harm was caused by a constitutional violation, but also, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889

7

(6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds*, *Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct"). The Court will now consider each of Plaintiff's constitutional claims.

*Freedom-of-religion claim*

Plaintiff alleges that in October 2012 and March 2013 he made the request for "meals to follow my religious teaching," but was denied. He states that therefore he was "denied the opportunity to celebrate Yom Kippur and Passover required by my religion." He alleges that these denials violated his First and Ninth Amendment rights. Upon consideration, the First Amendment claim will be allowed to proceed beyond initial screening against Defendants Strode and Edmonds. The Ninth Amendment claim will be dismissed as explained below.

*Eighth Amendment claim related to denial of analgesics*

Plaintiff alleges that his herniated disc is a serious medical need. He alleges that he was denied analgesics to help with the pain caused by this condition. He alleges that Defendant Waldridge discontinued providing analgesics, advising Plaintiff he could buy them from the commissary. He states that during the period of August 2011 until March 2013 Defendants

8

Dority and Waldridge "provided less th[a]n a de minimis amount of analgesics." He does not allege that he could not afford analgesics.

Plaintiff also alleges that he developed a painful boil on July 9, 2013. He states that over the next 10 days the nurse cleaned and manually drained the boil but no analgesics were provided, as Plaintiff had been told he could purchase analgesics from the commissary.

Charging inmates who can pay for medical care does not constitute deliberate indifference. *White v. Corr. Med. Servs. Inc.*, 94 F. App'x 262, 264 (6th Cir. 2004) (citation omitted) ("It is constitutional to charge inmates a small fee for health care where indigent inmates are guaranteed service regardless of ability to pay."); *Reynolds v. Wagner*, 128 F.3d 166, 173-75 (3d Cir. 1997). Prisoners can be asked to budget their monthly income and to be selective in their purchases to enable them to buy their own medications. *Reynolds*, 128 F.3d at 175. If the prisoner makes the choice to purchase other items and forego medication, any delay in treatment which occurs is solely a result of the inmate's decisions, not because of any conduct on the part of the prison administration. *Id*. The corollary is that "a prison official violates the Eighth Amendment by refusing to provide prescribed OTC medicine for a serious medical need only if the inmate[] lacks sufficient resources to pay for the medicine." *Martin v. DeBruyn*, 880 F. Supp. 610, 615 (N.D. Ind. 1995).

Although Plaintiff does not allege that he could not afford to purchase analgesics from the commissary, his prison trust account statement, submitted in support of his application to proceed *in forma pauperis*, suggests that between October 2011 and July 2013, he did not have funds to make such purchases. Reading the complaint liberally, Plaintiff appears to allege that a policy or custom of WCRJ prompted the refusal to provide him with analgesics. The Court will

9

assume for purposes of initial screening that both the herniated disc and the boil are serious medical conditions and will allow Plaintiff's claims relating to the denial of analgesics to continue past initial screening against Defendants Dority and Waldridge.

*Eighth Amendment claim relating to cirrhosis*

Plaintiff alleges that he suffers from cirrhosis of the liver and that he was not treated for ammonia buildup with Lactulose until May 2, 2012, after he was given a blood test to check ammonia levels in his blood. Plaintiff alleges that, had Defendants "performed the blood test in August 2011[,] Lactulose could have been p[re]scribed and would have put the plaintiff in a position to maintain a therapeutic level." Plaintiff further alleges that for almost a year the Lactulose was administered twice a day instead of three times a day, causing him chronic diarrhea from May 2012 to May 2013.

To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). Here, Plaintiff fails to state a claim for deliberate indifference to a serious medical need. Plaintiff's belief that he should have been given the blood test earlier merely constitutes a disagreement over medical treatment and, as such, does not state a claim under the Eighth Amendment. *See Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.").

Moreover, with regard to Plaintiff's allegation that for a year the Lactulose was administered twice a day instead of three times a day, that allegation does not rise to the level of deliberate indifference. At most, Plaintiff alleges negligence in the administration (or mis-administration) of his medicine. "To make out an Eighth Amendment claim based on the failure to provide adequate medical care, a prisoner must show that the state defendants exhibited 'deliberate indifference' to his 'serious' medical needs; the mere negligent or inadvertent failure to provide adequate care is not enough." *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 199 n.5 (1989). For these reasons, the Court will dismiss Plaintiff's claim related to his cirrhosis for failure to state a claim.

*Claim related to conditions during segregation*

Plaintiff alleges that he was put in segregation for 24 hours in a cell which he describes as filthy, with urine on the floor and feces in the toilet. He states he was denied cleaning supplies, despite numerous requests. He alleges that being kept in this cell with no cleaning supplies was cruel and unusual punishment because he has cirrhosis of the liver and a weakened immune system and is thus "more in danger of contracting another hepatic disease." He also states that because he takes a laxative and has chronic diarrhea he was in fear that he would lose control over his bowels. However, he states that he did not lose control of his bowels.

The length of confinement is important in determining whether conditions of confinement meet constitutional standards. *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) ("[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months."); *Ziegler v. Mich.*, 59 F. App'x 622, 624

11

(6th Cir. 2003) (holding that allegations of overcrowded cells and denials of daily showers and out-of-cell exercise do not rise to constitutional magnitude, where a prisoner is subjected to the purportedly wrongful conditions for six days one year and ten days the next year). Thus, where the duration of filthy or uncomfortable conditions is short, no constitutional violation occurs. *See Metcalf v. Veita*, No. 97-1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) (finding that an eight-day denial of showers, trash removal, cleaning, and laundry did not result in serious pain or offend contemporary standards of decency under the Eighth Amendment); *Whitnack v. Douglas Cnty.*, 16 F.3d 954, 958 (8th Cir. 1994) (holding that deplorably filthy and patently offensive cell with excrement and vomit not unconstitutional because conditions lasted only for 24 hours); *Bass v. Strode*, No. 1:12CV-P182-R, 2012 WL 5834123, at *3-4 (W.D. Ky. Nov. 16, 2012) (finding that isolation for 72 hours in which plaintiff was forced to eat and sleep on the floor without cleaning supplies was not a constitutional violation).

Here, Plaintiff's stay in the allegedly filthy cell lasted only 24 hours. The Court concludes, therefore, that Plaintiff has failed to allege a constitutional violation.

*Claim related to legal correspondence*

Plaintiff alleges that Defendants Strode and Edmonds conspired with each other on four occasions in the prior year by "confiscating and seizing legal correspondence." He also states that Defendants "delayed legal correspondence that was clearly marked as privileged correspondence, the return address included the statement of 'ELPO Law.'" Plaintiff does not allege that his access to the courts was harmed by the seizing of his privileged correspondence.

There must be some allegation that the prison official's conduct amounted to denial of access to the courts or some form of censorship of speech. *See Corsetti v. McGinnis*, 24 F.

App'x 238, 241 (6th Cir. 2001) ("Regarding the alleged reading of Corsetti's legal mail and legal materials, Corsetti has not alleged, nor is there any evidence, that any papers were seized or that the defendants' reading of the papers caused actual injury or 'hindered his efforts to pursue a legal claim.'" (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996)); *see also Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) ("A plaintiff must show that non-delivery of his legal mail resulted in actual injury by frustrating, impeding, or hindering his efforts to pursue a legal claim.") (internal quotation marks and citations omitted). There are no such allegations here, and this claim must be dismissed for failure to state a claim. *See Lewis v. Grider*, 27 F. App'x 282, 283 (6th Cir. 2001) (holding prisoner's claim for interference with access to courts through opening legal mail failed "as he alleged no prejudice to any pending litigation").

*Ninth Amendment claims*

Plaintiff's complaint also refers to the Ninth Amendment. The Ninth Amendment provides, "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. CONST. AMEND. IX. It "does not confer substantive rights in addition to those conferred by other portions of . . . governing law," *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991), and it does not apply to Plaintiff's claims. Consequently, his Ninth Amendment claims will be dismissed.

*Claim for punitive damages*

Because Plaintiff's suit against these county employees in their official capacities is tantamount to suing the municipality itself, punitive damages are not available. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 260-261 (1981). Thus, Plaintiff's punitive-damage claim will be dismissed for seeking relief from Defendants immune from such relief.

13

## IV. ORDER

For the reasons above, and being otherwise sufficiently advised,

**IT ORDERED** that Plaintiff's claims under Title 18 of the U.S. Code, 42 U.S.C. § 1985, the Ninth Amendment, and Plaintiff's claims related to his cirrhosis, conditions of confinement during segregation, and his mail are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that Plaintiff's claim for punitive damages is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b) (2) for seeking monetary relief from Defendants immune from such relief.

As no claims remain against Defendants Captain Tim Wilson and the four unnamed deputies, the **Clerk of Court is DIRECTED to terminate Defendant Wilson and the four unnamed deputies** as parties to this action.

**IT IS FURTHER ORDERED that the First Amendment freedom-of-religion claim against Defendants Strode and Edmonds in their official capacities and the Eighth Amendment claim related to denial of analgesics against Defendants Dority and Waldridge**

**in their official capacities shall continue past initial screening**.  In permitting these claims to proceed, the Court passes no judgment on their merits or the ultimate outcome of the action.  The Court will enter a separate Scheduling Order governing the development of the continuing claims.

Date: June 27, 2014

*[Signature]*
**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: Plaintiff, *pro se*
  Defendants
  Warren County Attorney
4414.009